**Milton Anthony THOMAS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–05–00612–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 9, 2006.

R.P. Cornelius, Houston, TX, for Appellant.

Charles A. Rosenthal, Jr., District Attorney, Jessica A. McDonald, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Milton Anthony Thomas, was charged by indictment with aggravated robbery, enhanced by one prior felony conviction. *See* TEX. PEN.CODE ANN. § 29.03 (Vernon 2003). He pleaded not guilty to the primary offense and pleaded "not true" to the enhancement. A jury found appellant guilty, found the enhancement paragraph not true, and assessed punishment at 50 years' confinement.

Appellant raises four issues. In his first through third issues, appellant contends that the trial court erred by overruling his objections to the State's peremptory challenges to exclude three veniremembers on the basis of race, in violation of *Batson v. Kentucky.*[1] In his fourth issue, appellant challenges the factual sufficiency of the evidence to support his conviction.

We reverse and remand.

### Background

After a dice game at a local nightclub, appellant shot and injured the complainant while stealing the complainant's winnings. At trial, the State used its 10 peremptory strikes to exclude six of the seven African–Americans on the panel of 38 eligible jurors. Veniremembers 5, 10, 14, 16, 21, 24, and 30 were African–American. The State struck each of the veniremembers, with the exception of number 16, who ultimately served on the jury. The defense objected

---

1. 476 U.S. 79, 106 S.Ct. 1712 (1986).

to the State having used "fifty percent" [2] of its peremptory challenges to exclude African–American veniremembers based on race, in violation of *Batson*. The trial court overruled the objection.

### Challenge to Veniremember 14

In his second issue, appellant contends that the trial court erred in overruling his objection to the State's peremptory strike of Veniremember 14, Janice Williams, because the State "engaged in purposeful discrimination," citing article 35.261 of the Texas Code of Criminal Procedure and *Batson v. Kentucky*.[3]

### A. The Law

Article 35.261 and *Batson v. Kentucky* prohibit the use of peremptory challenges to exclude veniremembers on the basis of race. TEX.CODE CRIM. PROC. ANN. art. 35.261; 476 U.S. 79, 85, 106 S.Ct. 1712, 1716 (1986). Striking a veniremember on the basis of race violates the equal protection guarantees of the United States Constitution. *Batson*, 476 U.S. at 85, 106 S.Ct. at 1717.

Resolution of a *Batson* challenge is a three-step process. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995); *Shuffield v. State*, 189 S.W.3d 782, 785 (Tex.Crim.App.2006); *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.-Houston [1st Dist.] 2002, pet. ref'd). First, the defendant must make a prima facie showing that the State exercised a peremptory challenge on the basis of race. *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770; *Shuffield*, 189 S.W.3d at 785; *Goldberg*, 95 S.W.3d at 385.

Second, the burden of production shifts to the State to articulate a race-neutral reason for its strike. *Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770; *Shuffield*, 189 S.W.3d at 785; *Goldberg*, 95 S.W.3d at 385. A reason is deemed race-neutral if no discriminatory intent is inherent in the explanation given. *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771. This step does not require an explanation that is persuasive. *Id.* at 767–68, 115 S.Ct. at 1771.

Finally, the trial court determines whether the defendant has carried his burden to prove purposeful discrimination. *Id.* at 767–78, 115 S.Ct. at 1770–71; *Shuffield*, 189 S.W.3d at 785. Because it is the defendant's burden to prove, by a preponderance of the evidence, that the purported race-neutral explanation is mere pretext for purposeful discrimination, the defendant is given an opportunity to rebut the State's reason. *Simpson v. State*, 119 S.W.3d 262, 268 & n. 48 (Tex.Crim.App. 2003).

### B. Standard of Review

We examine a trial court's ruling on a *Batson* challenge under the "clearly erroneous" standard of review. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex.Crim.App. 2004); *Goldberg*, 95 S.W.3d at 385. To hold that a decision was clearly erroneous, we must be left with a "definite and firm conviction that a mistake has been committed." *Goldberg*, 95 S.W.3d at 385 (quoting *Vargas v. State*, 838 S.W.2d 552, 554 (Tex. Crim.App.1992)). The "clearly erroneous standard is a highly deferential standard because the trial court is in the best position to determine whether [the State's] facially race-neutral explanation for a peremptory strike is genuinely race-neutral."

---

**2.** The record shows that the State used six of its ten, or sixty percent, of its peremptory challenges to exclude African–Americans.

**3.** TEX.CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989); 476 U.S. 79, 106 S.Ct. 1712 (1986).

*Gibson,* 144 S.W.3d at 534. We focus on the genuineness rather than on the reasonableness of the State's asserted race-neutral reason. *Id.* at 533–34.

■ In evaluating the genuineness of State's proffered race-neutral reasons, we may consider (1) whether the reason given is related to the facts of the case; (2) whether the State meaningfully questioned the challenged veniremember; (3) whether persons with the same or similar characteristics as the challenged veniremember were not struck; (4) whether there was disparate examination of the members of the venire, i.e., questioning the challenged veniremember in a manner designed to evoke a certain response without asking the same question of the other venirepersons; and (5) whether an explanation was based upon a group bias although the specific trait is not shown to apply to the challenged juror. *Williams v. State,* 804 S.W.2d 95, 105–06 (Tex.Crim.App.1991).

## C. Analysis

■ During voir dire, the State asked veniremembers, "is there anyone … who has been a victim of a crime, a violent crime, aggravated robbery or aggravated assault or something violent, you, a close family member, or friend?" The record indicates that five eligible veniremembers (numbers 12, 14, 19, 26, and 27) answered in the affirmative, as follows:

[State]: … Juror No. 14, you have?

[Williams]: My boyfriend was a victim of aggravated robbery.

[State]: You have a boyfriend that was convicted?

[Williams]: No, he was a victim.

[State]: That changes it, doesn't it?

[Williams]: Yes.

[State]: Anything about that situation that would keep you from being a fair and impartial juror?

[Williams]: No.

[State]: Or treat this case differently and listen to the testimony?

[Williams]: Yes.

[State]: Anybody—Juror No. 12?

[No. 12]: I was a victim of aggravated robbery.

[State]: Anything about that situation that would prevent you from being a fair and impartial juror?

[No. 12]: No.

[State]: How long ago was it?

[No. 12]: It was over nine years ago.

[State]: … Juror No. 19?

[No. 19]: I had a daughter that was mugged and shot in the head, but thankfully she lived. But that made quite an impression on me.

[State]: Anything about that experience that would prevent you from being fair and impartial?

[No. 19]: No.

[State]: … Juror No. 26?

[No. 26]: My mom and my brother were assaulted nearby the apartments where we lived.

[State]: Anything about that situation that would prevent you from being a fair and impartial juror?

[No. 26]: Possibly, yes.

[State]: And how would that happen?

[No. 26]: I wouldn't want that to happen to anybody else, and I would very much pursue for that person was guilty [sic] to get what they deserve.

[State]: Would you hold it against this defendant?

[No. 26]: I'm not sure if I could or not because particularly I don't know what happened there, but as far as what happened with my mom and my brother they could have gotten killed with a gun and by stab wounds [sic].

[State]: Mr. Thomas is not the one that hurt your loved ones, is he?

[No. 26]: No.

[State]: Could you judge this case based on the evidence that you see and the testimony of the witnesses or would you always have what happened to your mom or brother in the back of your head?

[No. 26]: Actually I would focus on what's going on now because what happened then hopefully somebody will come forward and fix that problem [sic].

[State]: Juror 27, you raised your hand.

[No. 27]: My sister was a victim of armed robbery.

[State]: Is there anything about that situation that might prevent you from being a fair and impartial juror?

[No. 27]: I don't think so. I, of course, have some feelings about that; but I would certainly try to be fair.

[State]: Like what, what feelings?

[No. 27]: Well, I worked at the same store it happened at. It was several years ago. I just wasn't working that night, and just what happened with her and my friend and that it was unfair and that it shouldn't have happened.

[State]: In other words, something that happened to a loved one that when [sic] they went through it you kind of felt like you did, too.

[No. 27]: Right.

. . .

[State]: Juror No. 12, you said you had been a victim of an aggravated robbery?

[No. 12]: Yes.

[State]: Did they catch the guy?

[No. 12]: Yes.

[State]: . . . Did they catch the guy in your boyfriend's case, Juror No. 14?

[Williams]: Yes.

[State]: Juror No. 19, did they catch the guy that shot your daughter?

[No. 19]: No.

[State]: Juror No. 26, did they catch the guy that assaulted your mom and brother?

[No. 26]: No.

Among the five who answered that they or a close family member or friend had been victimized by crime, Williams was the sole African–American and the sole venire-member that the State struck.[4]

At the close of voir dire, after the clerk announced the jury selection, appellant objected as follows:

Judge, for the record, the eligible panel was through Juror No. 38. In the first 38 jurors, the African American jurors were No. 30, 16, 21, 24, 10, and 5. So, they were—and there was 16 [sic; should be 14 based on the record]. So there were six African Americans in the first 38; the State struck 5 of them. For that reason under Batson we would object to the Prosecutor using 50 percent of her strikes on black jurors and obviously not a race neutral one [sic].

The State does not dispute that appellant made a prima facie showing that the State exercised its peremptory challenges on the basis of race. *See Purkett*, 514 U.S. at 767, 115 S.Ct. at 1770; *Shuffield*, 189 S.W.3d at 785; *Goldberg*, 95 S.W.3d at 385. Hence, the issue of whether a prima facie

4. While veniremember 26 was stricken by agreement at a bench conference prior to the generation of the strike lists, the record shows that it was the defense who asked to strike number 26. The State indicated that it only sought an agreement as to veniremembers 22, 24, 30, and 44 at that point.

showing was actually made is moot. *See Simpson,* 119 S.W.3d at 268.

The burden of production then shifted to the State to give a race-neutral explanation. *Purkett,* 514 U.S. at 767, 115 S.Ct. at 1770. As to Williams, the State proffered: "[Williams], well, her boyfriend was a crime victim, and I don't put any of those on my jury."

Contending that the State's proffered reason was pretext for purposeful discrimination because the State did not strike the non-African-American crime victims, appellant argued as follows:

[Defense Counsel]: ... What was the reason on 14?

[State]: Her boyfriend is a prior crime victim.

[Defense Counsel]: How does that make her bad for the State?

[State]: I asked the question you or anyone else who's been a victim of a crime. I don't put crime victims on my panels. I don't like them.

[Defense Counsel]: You didn't strike all the other crime victims. You just struck the black crime victim.

[State]: I agreed to 26 who had the same issue.[5]

[Defense Counsel]: You didn't strike Juror No. 12.

[State]: You did.[6]

[Defense Counsel]: Right, but she's a crime victim.

. . . .

[Defense Counsel]: Juror No. 14, the only answer that was offered was the fact that she was a crime victim. She did not strike all the other crime vic-

tims, only the black crime victims [sic].

[State]: I agreed to 26, which was also a victim, the identical situation with someone in her family.

[Defense Counsel]: But Juror No. 12 also was on the record indicating she was a crime victim as well. She was not struck.

[The Court]: Denied.

[Defense Counsel]: So was the lady, Juror No. 19, she had a daughter that was shot in the head, she didn't strike her.

[State]: You struck her.

[Defense Counsel]: Right, I struck her; but my point is she struck the black crime victim. She didn't strike all the white crime victims.

[The Court]: That will be denied.

■ We consider whether the State's proffered reason was pretext for purposeful discrimination by examining whether statistics show a disproportionate use of peremptory strikes to exclude African–Americans from the venire and whether comparative evidence demonstrates disparate treatment of African–American veniremembers. *See Miller–El v. Dretke,* 545 U.S. 231, 240–41, 253–55, 264–66, 125 S.Ct. 2317, 2325–26, 2332–33, 2338–40, 162 L.Ed.2d 196 (2005) (sustaining *Batson* challenge on basis of several factors, including "bare statistics" and "side-by-side comparisons" of veniremembers who were struck with those who were not); *Vargas v. State,* 838 S.W.2d 552, 557 (Tex.Crim. App.1992) (holding that comparative evidence should be considered); *Vargas v.*

---

5. The record shows that the State did not strike veniremember 26; rather, the State agreed to allow the defense to strike veniremember 26 in exchange for the defense agreeing to allow the State to strike veniremember 22.

6. The State was not privy to defense counsel's strike of veniremember 12 when the State made its strike list.

*State,* 859 S.W.2d 534, 535 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd) (sustaining *Batson* challenge on basis of statistics, comparative evidence, and failure to question veniremember).

Here, the statistics show that the State used its 10 peremptory strikes to exclude six of the seven or 86% of the African-Americans on the panel of 38 eligible jurors. Veniremembers 5, 10, 14, 16, 21, 24, and 30 were African-American. The State struck all of the African-American veniremembers, with the exception of number 16, who ultimately served on the jury. As in *Vargas,* the State's strike of all of the African-American veniremembers, except one, constitutes disproportionate use of its peremptory strikes. *See Vargas,* 859 S.W.2d at 534, 535 (holding that State's strike of five of six African-Americans on 36-member venire constituted disproportionate use of peremptory strikes).

In addition, "side-by-side" comparisons show that the State's reason for exercising a peremptory strike against Williams, her friend having been victimized by crime, was equally on point with non-African American veniremembers 12, 19, 26, and 27. The record shows that venireperson 12 had, herself, been a victim of aggravated robbery; the daughter of venireperson 19 had been mugged and shot in the head; the mother and brother of venireperson 26 had been assaulted; and the sister of venireperson 27 had been a victim of aggravated robbery (the very offense at issue in this case). The State did not strike veniremembers 12, 19, or 26, and veniremember 27 served on the jury. The comparative evidence demonstrates disparate treatment of Williams. *See Miller–El,* 545 U.S. at 241, 125 S.Ct. at 2325–26 (explaining that when proffered reason for striking black panelist applies just as well to otherwise-similar nonblack who is permitted to serve, "that is evidence tending to prove purposeful discrimination to be considered at *Batson's* third step"); *Vargas,* 859 S.W.2d at 534–35 (holding that State's strike of African–American legal assistant on basis that she was member of legal profession but failing to strike non-African-American paralegal constituted disparate treatment).

Further, in response to the State's inquiry as to whether each venireperson's previous experience with violent crime would affect his or her ability to be a fair and impartial, Williams stated that it would not. However, venireperson 26 responded, "Possibly, yes." Venireperson 27 stated, "I don't think so. I, of course have some feelings about that; but I would try to be fair." Again, the State agreed to strike number 26 only in exchange for number 22,[7] and the State did not strike number 27.

Notably, the State bypassed veniremember 12 on the list before striking Williams, and still had three of her ten peremptory strikes available when she reached venireperson 27 on the list. If the State genuinely meant to exclude all crime victims from the jury as stated, it follows that it would have struck veniremember 12 first, and then struck veniremembers 19 and 27 as well. *See Vargas,* 859 S.W.2d at 535.

█ We recognize that an appellate court cannot automatically infer racial bias when the State's reasons for striking a minority veniremember would apply to an unchallenged non-minority veniremember. *Esteves v. State,* 849 S.W.2d 822, 824 n. 2 (Tex.Crim.App.1993). However, racial bias "can be imputed when there is disparate treatment of the veniremembers as to the sole reason or primary reasons stated

7. *See supra* note 5.

for the exercise of the peremptory challenge." *Id.*

Here, there is disparate treatment of the veniremembers as to the sole reason stated for the exercise of the State's peremptory challenge as to Williams. Comparing this strike with the treatment given other veniremembers who were also victims of crime and who, unlike Williams, even expressed a questionable ability to act impartially, supports a conclusion that race was significant in determining which jurors were challenged. *See Miller–El,* 545 U.S. at 241, 125 S.Ct. at 2325–26; *Vargas,* 859 S.W.2d at 535.

We cannot speculate as to whether other reasons may exist in the record that would have supported the strike of Williams. *See Miller–El,* 545 U.S. at 252, 125 S.Ct. at 2332; *Young v. State,* 856 S.W.2d 175, 176 (Tex.Crim.App.1993).

In drawing a jury to try an African–American defendant, six of the seven qualified African American veniremembers were peremptorily struck from a venire of 38. The record does not support the State's sole proffered race-neutral reason for its strike of Williams—that she was a victim of crime. The record shows that the non-African-American veniremembers who were also crime victims were not struck. Because the record shows disparate treatment of veniremember 12, we hold that the trial court's finding of no racial discrimination was clearly erroneous. *See Vargas,* 859 S.W.2d at 535. Accordingly, we sustain appellant's second issue.

■ The exercise of even one racially-motivated peremptory strike invalidates the jury selection process and requires a

new trial. *Whitsey v. State,* 796 S.W.2d 707, 716 (Tex.Crim.App.1989).

## Conclusion

We reverse the trial court's judgment and remand for further proceedings.[8]

---

8. Having sustained appellant's second issue, we need do not reach appellant's first, third, and fourth issues. *See* Tex.R.App. P. 47.1.