# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00105-CR

**Kahtisha McKnight, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
### NO. 60884, HONORABLE JOE CARROLL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Our opinion and judgment dated February 5, 2009, are withdrawn and the following is substituted in their place. We overrule McKnight's motion for rehearing.

A jury convicted Kahtisha McKnight of the offense of murder. *See* Tex. Penal Code Ann. § 19.02(b)(3) (West 2003). Punishment was assessed at life imprisonment. In a single issue on appeal, McKnight asserts that the district court erred in denying her challenge to the State's use of its peremptory strikes on the basis that some strikes were racially motivated. We will affirm the judgment.

# BACKGROUND

The underlying facts of this case are not disputed on appeal. The State alleged that McKnight, during the course of intentionally, knowingly, or recklessly attempting to commit or committing the offense of injury to a child, caused the death of her daughter by striking her with an unknown object or by throwing, shoving, or kicking her against an unknown object.

The case proceeded to trial. The venire panel was comprised of fifty potential jurors. Of these, the following potential jurors indicated on their juror questionnaires that they were of a race other than white: 6 (black), 16 (black), 20 (black), 23 (black), 26 (black), 29 (hispanic), 32 ("mixed"), 34 (asian), 36 (black), 40 (hispanic), 45 (black), 47 (black), and 48 (white/hispanic). Four additional potential jurors failed to identify their race, although the record reflects that one—22—was black. The State exercised six of its ten peremptory strikes on non-white prospective jurors: 16, 20, 22, 23, 26, and 32. It did not strike two non-white jurors in the range likely to be selected, 6 and 29, who were both ultimately seated on the jury.

Before the jury was empaneled, defense counsel made a *Batson* challenge to the State's peremptory strikes, claiming they were racially motivated. *See Batson v. Kentucky*, 476 U.S. 79 (1986). The State offered the following explanations for its strikes:

[Regarding prospective juror 16, a black female who had indicated during voir dire that she previously had been represented by defense counsel]

[Prosecutor]: Judge, she was previously represented by [defense counsel].

[The court]: Uh-huh, okay.

[Prosecutor]: On a bankruptcy case where she was directly represented by him.

2

[The court]: All right.

[Prosecutor]: And I even asked her about that attorney-client relationship.

[The court]: Okay. Let's—Anything else before we—

[Prosecutor]: No.

. . . .

[Regarding prospective juror 20, a black female who indicated on her questionnaire that she was employed as a certified nursing assistant (CNA)]

[Prosecutor]: Judge, No. 20 is a certified nurse's aide, a CNA.

[The court]: Uh-huh.

[Prosecutor]: I routinely strike all CNAs, regardless of race, gender. I see CNAs all the time testifying for defendants. CNAs are folks—not to slam the profession per se—but they're folks who did [not] go on to get a nursing degree, they are folks take care of the basic type things, and I believe there's even a program over in the Work Force to get them jobs. More often than not the people I have testify at bond reductions to get out drug dealers and other folks are going to be CNAs. And I never keep CNAs or for that matter prison guards on my juries. I just simply don't do it.

[The court]: Did anybody ask her any questions?

[Prosecutor]: No, Judge. I did not ask her any. I just drew a line through it when I saw "CNA" when I was going over my initial list.

. . . .

[Regarding prospective juror 22, a black female who had indicated on her questionnaire that she was employed as a manicurist]

3

[Prosecutor]: Judge, I struck her because she indicated she had a problem focusing on this case because she was self-employed as a manicurist.

[The court]: Yeah.

[Prosecutor]: And that is when I made the point about being hogs for people's attention, we needed the undivided attention, at which time another juror who is a mechanic piped up and said he was self-employed. And that would be Juror No. 19, [juror's name]. And I struck him as well. Both of those folks indicated they were self-employed and they were losing money for being here and their attention would be diverted from the facts. [Prospective juror 19] listed his race as white.

. . . .

[Regarding prospective juror 23, a black female]

[Prosecutor]: Judge, I'm pretty sure I prosecuted her husband, [name]. I was looking on my computer system. There are [name] in the AS400. I'm pretty sure I'm familiar with that name. I recall him being in his mid 50s, and it was a drug possession case.

. . . .

[Regarding prospective juror 26]

[Prosecutor]: Judge, that is [prospective juror 26]. I'm actually prosecuting . . . her sister, who also works at Quality Time Day Care for injury to a child. I pulled my file while I was in the office, and Mrs. Schneible—we were trying to figure out if it was the same person. The person I'm prosecuting is [name of prospective juror's sister], and she works at Quality Time Day Care. This must be her sister, [prospective juror 26], who works over at the same day care over in Killeen. And the fact that I'm prosecuting her, and I am prosecuting her, she is represented by Potter and Company. That, of course, caused me some concern.

. . . .

[Regarding prospective juror 32]

> [Prosecutor]: Judge, our reason—Well, to start with, I thought he was Caucasian, but I guess he wrote down "mixed." But I recall him because he was very odd. When I was talking to him during my voir dire, he talked about how everything is all choreographed. And I was talking to them about pretrial publicity and whether he believes stuff in the newspapers and what he sees on TV, or if he wants to wait and hear it in court. That's the best place to get the facts directly from the witnesses who know about them. And he made the comment about it all being very choreographed. And then he was the focus of [defense counsel's] question. [Defense counsel] went to him on a number of things, and I saw him truthfully as a strong defense juror because of the choreographed statement. And being we are the ones that is going to be presenting witnesses, that caused me some concern.

. . . .

The district court stated its belief that the State had provided race-neutral explanations for striking prospective jurors 16, 22, 23, 26, and 32. However, the court later inquired about the State's reason for striking prospective juror 20, the CNA. The district court asked the prosecutor if he had struck any other CNAs, specifically any "white ones." The prosecutor explained,

> [Prosecutor]: No, Judge. There was no one else. And I always go through looking for CNAs and prison guards, but there were no other folks who reported being CNAs. We do have other medical people, but they went on to get their nursing license and degree. And that's the reason I focused in on this CNA. And, Judge, you can even ask Judge Trudo, if you want to; but she is very familiar with the fact that I strike all CNAs regardless of gender or anything else.

5

[The court]:      Well, that's—I don't know.  Have you got any cases that—Anybody have any cases on that issue that they could cite me to?

[Defense]:        Your Honor, I based my *Batson* challenge based on the fact that it was 60% of the strikes, more than half of the peremptories used, and that merely shifts the burden.  It's the State's burden to prove to the Court race neutral conditions.

[The court]:      . . . .  Well, I think you got a race neutral explanation on everything except No. 20, and I'm just confused about that.  I think if you want to have a race neutral explanation about No. 20, the least thing you ought to do is either ask her a question, or you ought to have some case that says that you could strike CNAs, or that you can just pick out house painters or something like that, and just say I'm going to strike them regardless.  You know, have you got any cases on that?

[Prosecutor]:     No, Judge.  But I don't think professions fall under *Batson*.  I don't think—I mean to tell you the truth, I don't normally keep prison guards, I don't keep painters, I don't keep folks in certain professions regardless of race or socioeconomic status just because we have had issues with them as jurors in the past.  And CNA is one profession I've found that I see them oftentimes married and dating people who are involved in criminal activity.  And I know there are CNA programs for people who themselves get in trouble, and it causes me concern leaving any CNAs on there.  I don't keep prison guards as well.  And, again, I don't think there's anything that's race or prohibitive from us striking based upon a particular profession.

[The court]:      Okay.  Well, I'm satisfied as to the race neutral explanation on everything then, and I feel like that you did—you have made a point.  And that is I know that there are some rehabilitation classes that you can get if you are on probation or on parole where you can study to be a CNA.  And now that you mention it, we—you know, that may be a valid objection.

The district court then denied defense counsel's *Batson* challenge.  McKnight was subsequently convicted and sentenced.  This appeal followed.

6

## STANDARD AND SCOPE OF REVIEW

To succeed on a *Batson* challenge, the defendant must demonstrate, by a preponderance of the evidence, that the prosecutor indulged in purposeful discrimination against a member of a constitutionally-protected class in exercising his peremptory challenges. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). The United States Supreme Court has explained that proof of purposeful discrimination under *Batson* follows a three-step, burden-shifting framework:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328-29 (2003) (internal citations omitted).

On appeal, the State does not dispute that McKnight satisfied her step-one obligation to make a prima facie showing that the State exercised its peremptory challenges on the basis of race. Thus, that issue is not before us. *See Thomas v. State*, 209 S.W.3d 268, 272-73 (Tex. Crim. App. 2006). "At the second step of this process, the proponent of the strike need only tender an explanation that is race neutral on its face." *Watkins*, 245 S.W.3d at 447 (citing *Purkett*, 514 U.S. at 767-68). "The ultimate plausibility of that race-neutral explanation is to be considered as part of the third step of the analysis, in which the trial court determines whether the opponent of the strike (usually the defendant) has satisfied his burden of persuasion to establish by a preponderance of the evidence that the strike was indeed the product of the proponent's purposeful discrimination."

7

*Id.* (citing *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance." *Id.* (citing *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) ("The term 'pretext' is solely a question of fact; there is no issue of law. Therefore, the trial court was in the best position to make that credibility determination.")).

On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous. *Snyder v. Louisiana*, 128 S. Ct. 1203, 1207 (2008); *Watkins*, 245 S.W.3d at 447-48.[1] In other words, the trial court's ruling will not be disturbed unless the reviewing court is "left with a definite and firm conviction that a mistake has been committed." *Hernandez*, 500 U.S. at 369. "This is a highly deferential standard because the trial court is in the best position to determine whether a prosecutor's facially race-neutral explanation for a peremptory strike is genuinely race-neutral." *Gibson*, 144 S.W.3d at 534; *see also United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (*Batson* inquiry is "quintessentially a question of fact which turns heavily on demeanor and other issues not discernable from a cold record, such that deference to the trial court is highly warranted."). Therefore, "in the absence of exceptional circumstances," we are to defer to the trial court. *Hernandez*, 500 U.S. at 366.[2]

---

[1] *Cf. Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 515 (Tex. 2008) (citing *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex. 1997)) (in civil cases, Texas courts review *Batson* ruling for abuse of discretion).

[2] On rehearing, McKnight emphasizes *Reed v. Quarterman*, __ F.3d __, ___, 2009 U.S. App. LEXIS 579 (5th Cir. 2009), in which the Fifth Circuit reversed a trial court's denial of federal habeas relief based on a *Batson* challenge to the Dallas County District Attorney's use of peremptory strikes in a 1979 murder trial. Besides involving more compelling evidence of discriminatory intent

In making its determination of whether the trial court's decision was clearly erroneous, "the reviewing court should consider the entire record of voir dire; it need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record." *Watkins*, 245 S.W.3d at 448. We are to examine the totality of the circumstances surrounding the challenged strike, including the strikes of other prospective jurors. *See Snyder*, 128 S. Ct. at 1208. We review the record in the light most favorable to the trial court's ruling. *Guzman v. State*, 85 S.W.3d 242, 255 (Tex. Crim. App. 2002).

**ANALYSIS**

On appeal, McKnight challenges only the district court's overruling of her *Batson* challenge regarding prospective juror 20, claiming that the State's proffered reason for striking her—that she was a CNA—was a pretext for racial discrimination. McKnight does not complain of the State's use of other peremptory strikes other than to assert that, when examining the totality of the circumstances, the State's strikes of prospective jurors 16 and 23 should "impact the analysis" of whether the strike of prospective juror 20 was racially motivated.

Prospective juror 20 was not questioned by either party during voir dire. According to her juror information questionnaire,[3] she is a 45-year-old black female employed by "Vista Care

---

than this case, *see id*. at *33-53, *Reed* is distinguishable because the Fifth Circuit reviewed that record under a de novo standard—not the highly deferential "clearly erroneous" standard we apply here—because the trial judge had made no "ruling on discriminatory intent to which we much defer." *See id*. at *9 n.1.

[3]    The State asserts that, because the juror questionnaires were not "offered into evidence at trial," they may not be considered in our analysis. *See Vargas v. State*, No. 1507-89,

Hospice" as a CNA. She has been working there for nine-and-a-half years. She is married to a truck driver who has worked for a shipping and receiving company for four years. The couple lives in an apartment in Killeen and has two children between the ages of 20 and 27. Her highest level of education completed is listed as "GED." She indicated that she had never served on a criminal jury and that she had never been an accused, complainant, or witness in a criminal case.

The prosecutor's stated reason for striking prospective juror 20 was that she was a CNA. The prosecutor informed the district court that he does not "keep folks in certain professions regardless of race or socioeconomic status just because [the State has] had issues with them as jurors in the past." These professions, the prosecutor explained, include prison guards, painters, and CNAs. According to the prosecutor, he "routinely strike[s] all CNAs, regardless of race, gender." The prosecutor explained that he "see[s] CNAs all the time testifying for defendants," and "CNA is one profession [he's] found that [he] see[s] them oftentimes married and dating people who are involved

<hr>

1992 Tex. Crim. App. LEXIS 173, at *15-16 (Tex. Crim. App. Sept. 16, 1992) (not designated for publication). However, the court of criminal appeals has recently instructed that, in reviewing a *Batson* challenge, the reviewing court "need not limit itself to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record." *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). In this case, the juror questionnaires are included in the clerk's record. Additionally, it is apparent from the reporter's record of the *Batson* hearing that the parties and the district court were referencing the questionnaires during the hearing, as some of the arguments made by the prosecutor and considered by the district court were based on information that could have been gleaned only from the cards. For example, prospective juror 20 was not asked any questions during voir dire, but the parties and the district court were nevertheless aware that she was a CNA. That information was listed on her questionnaire. Because the information contained on the juror questionnaires is "manifestly grounded in the appellate record," *see id*. at 248, we shall consider it. *See Cornish v. State*, 848 S.W.2d 144, 145 (Tex. Crim. App. 1993) (considering juror information cards even though they were not admitted into evidence during trial because it was clear from appellate record that parties and trial court were relying on cards during *Batson* hearing).

in criminal activity." The prosecutor added, "More often than not the people I have testify at bond reductions to get out drug dealers and other folks are going to be CNAs." The prosecutor also stated that he "know[s] there are CNA programs for people who get themselves in trouble, and it causes [him] concern leaving any CNAs on [the jury]." The prosecutor further stated, "We do have other medical people, but they went on to get their nursing license and degree. And that's the reason I focused in on this CNA."

Other than the district court's own questioning, the prosecutor's explanation for his strike went unchallenged during the *Batson* hearing. Defense counsel did not cross-examine the prosecutor about the strike, nor did he offer any rebuttal or impeachment evidence tending to show that the prosecutor's reasons were pretextual. Defense counsel simply stated his belief that it was "the State's burden to prove to the Court race neutral conditions." However, that is not the law. While the State has a burden of production to put forth a race-neutral explanation for the challenged strike, the burden of persuasion remains with the defendant, who must prove, by a preponderance of the evidence, that the race-neutral explanation was pretextual. *See Purkett*, 514 U.S. at 767-69; *Watkins*, 245 S.W.3d at 447.

In this case, the State met its burden of production by offering prospective juror 20's occupation as the reason for its strike. An occupation or profession is a race-neutral explanation for a peremptory strike. *See, e.g.*, *Tompkins v. State*, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987) (postal worker); *Contreras v. State*, 56 S.W.3d 274, 279 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (attorney); *Lee v. State*, 949 S.W.2d 848, 850 (Tex. App.—Austin 1997, pet. ref'd) (self-employed artist); *Godine v. State*, 874 S.W.2d 197, 205 (Tex. App.—Houston [14th Dist.] 1994,

no pet.) (clothes presser); *Davis v. State*, 822 S.W.2d 207, 211 (Tex. App.—Dallas 1991, pet. ref'd) (social worker). Thus, McKnight had the burden to prove to the district court, by a preponderance of the evidence, that the State's race-neutral explanation was pretextual. *See Purkett*, 514 U.S. at 767-69; *Watkins*, 245 S.W.3d at 447; *see also Keeton v. State*, 749 S.W.2d 861, 868 (Tex. Crim. App. 1988) ("Once the prosecutor has articulated a nondiscriminatory reason for challenging the black jurors, the other side can offer evidence showing that the reasons or explanations are merely a sham or pretext.").

In making this determination, courts are to "focus on the genuineness rather than on the reasonableness of the State's asserted race-neutral reason." *Thomas v. State*, 209 S.W.3d 268, 271 (Tex. Crim. App. 2006) (citing *Gibson*, 144 S.W.3d at 533-34). In evaluating the genuineness of the State's proffered race-neutral reasons, courts may consider several factors, including: (1) whether the reason given is related to the facts of the case; (2) whether the State meaningfully questioned the challenged veniremember; (3) whether persons with the same or similar characteristics as the challenged veniremember were not struck; (4) whether there was disparate examination of the members of the venire, i.e., questioning the challenged veniremember in a manner designed to evoke a certain response without asking the same question of the other venirepersons; and (5) whether an explanation was based upon a group bias although the specific trait is not shown to apply to the challenged juror. *Id.*; *Williams v. State*, 804 S.W.2d 95, 105-06 (Tex. Crim. App. 1991); *Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1989); *Keeton*, 749 S.W.2d at 867 (Tex. Crim. App. 1988).

McKnight contends that three of the above factors apply in this case—the reason for the strike was not related to the facts of the case; the prosecutor's explanation was based upon a group bias although the specific trait was not shown to apply to the challenged juror; and the prosecutor did not question the challenged juror. We agree that the prosecutor did not question juror 20 during voir dire and that specific traits of CNAs that concerned the prosecutor were not shown to apply to the challenged juror. For example, the prosecutor stated that he often sees CNAs "married and dating people who are involved in criminal activity," and that he knows "there are CNA programs for people who get themselves in trouble." However, no showing was made that the spouse of prospective juror 20 was ever "involved in criminal activity" or that prospective juror 20 had ever "gotten herself into trouble." In fact, her juror questionnaire indicated that she had never been an accused, complainant, or witness in a criminal case. Finally, there is not necessarily a clear correlation between CNAs supposedly often testifying at "bond reductions" on behalf of "drug dealers and other folks," as the prosecutor claimed was his experience, and the facts of the incident murder trial.

Additionally, McKnight emphasizes the relative percentages of white versus non-white potential jurors struck by the State. Within the first thirty-three members of the venire,[4] the State struck five of the six potential jurors (83%) who identified themselves as black while striking only four of the twenty-two venirepersons (18%) who identified themselves as white. McKnight observes that such disproportionate percentages, although alone not dispositive, may be evidence of

---

[4] Those in range to be chosen as jurors or as the alternate juror.

13

discriminatory intent. *See Miller-El v. Dretke*, 545 U.S. 231, 240-41 (2005); *Watkins*, 245 S.W.3d at 452; *Thomas*, 209 S.W.3d at 273-74.

Although the above factors may be evidence from which the district court could have inferred pretext, we must be mindful of our standard of review: We may reverse the district court only if we are "left with a definite and firm conviction that a mistake has been committed." *Hernandez*, 500 U.S. at 369. On this record, viewing the evidence in the light most favorable to the district court's ruling, we cannot conclude that the district court clearly erred. *See Anderson v. Bessemer City*, 470 U.S. 564, 573-74 (1985) ("If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse . . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

First, although the district court questioned the prosecutor's race-neutral explanation until satisfied with it, defense counsel did not offer any rebuttal or impeachment evidence tending to show that the prosecutor's explanation was pretextual, nor did he cross-examine the prosecutor about his explanation. We emphasize that the ultimate burden of persuasion in a *Batson* challenge is not on the State—the burden is on the defendant to prove pretext. *See Purkett*, 514 U.S. at 767-69; *Watkins*, 245 S.W.3d at 447. The district court could have reasonably found that the defendant did not satisfy her burden of proof.

Second, although a prosecutor's failure to question a challenged juror may be probative of pretext, a prosecutor's race-neutral reasons for striking a challenged juror "are not rendered impermissible simply because he did not do so." *Vargas v. State*, 838 S.W.2d 552, 556

14

(Tex. Crim. App. 1992); *Walker v. State*, 859 S.W.2d 566, 568 (Tex. App.—Waco 1993, pet. ref'd). The prosecutor could have simply decided, without questioning the prospective juror, that he did not, under any circumstances, want a CNA on the jury because of his past experience with CNAs. *Batson* allows a prosecutor to exercise his peremptory strikes based on past experience, so long as racial discrimination is not the motive. *See Keeton*, 749 S.W.2d at 865. The district court could have reasonably found, based on the prosecutor's undisputed description of his past experience with CNAs, that the prosecutor's race-neutral explanation was genuine.[5]

Third, as McKnight acknowledges, we must also consider the State's strikes of other prospective jurors in our analysis. *See Snyder*, 126 S. Ct. at 1208. The State struck five other prospective jurors who identified themselves as African-American or of "mixed" race—prospective jurors 16, 22, 23, 26, and 32. The prosecutor's explanations for striking these jurors can be summarized as follows:

- The prosecutor stated that he struck prospective juror 16 because she had previously been represented by defense counsel.

- The prosecutor stated that he struck prospective juror 22 because she was self-employed, and she indicated that she was losing money by serving on the jury. The prosecutor feared, therefore, that her "attention would be diverted from the facts."

---

[5] McKnight asserts that the district court initially "did not accept the explanation given by the State," but found the explanation acceptable only after the district court "tired" of McKnight's *Batson* challenge. *See* Appellant's Brief at pp. 23-24. The record does not support this assertion, especially as we must view it under our standard of review. The district court stated that it was simply "confused" about the prosecutor's initial explanation, but ultimately accepted the explanation after the prosecutor elaborated further on his reasoning. The record reflects that, rather than rushing to judgment on the *Batson* challenge, the district court judiciously withheld its ruling until satisfied with the genuineness of the State's explanation.

- The prosecutor stated that he struck prospective juror 23 because he may have prosecuted her husband in a drug possession case.

- The prosecutor stated that he struck prospective juror 26 because he was prosecuting her sister.

- The prosecutor stated that he struck prospective juror 32 because of the prospective juror's comment about how trials are "choreographed."

At the *Batson* hearing, McKnight did not argue that any of the above explanations were pretextual. Furthermore, on appeal, McKnight does not challenge the prosecutor's explanations for striking prospective jurors 22, 26, and 32. McKnight does, however, contend that the strikes of prospective jurors 16 and 23 provide evidence of the State's discriminatory intent.

We first address prospective juror 16. One of the questions asked by the prosecutor during voir dire was whether any of the prospective jurors knew defense counsel. Prospective jurors 10 and 16 indicated that they did. Prospective juror 10, a white female, informed the prosecutor that defense counsel had represented her daughter in a divorce proceeding. Prospective juror 16, a black female, informed the prosecutor that she had been represented by defense counsel in a bankruptcy proceeding. When the prosecutor asked the prospective jurors if they could be fair despite knowing defense counsel, both answered that they could. Nevertheless, the State subsequently exercised one of its peremptory strikes on prospective juror 16, the black female. The State did not, however, exercise a peremptory strike on prospective juror 10, the white female.

McKnight asserts that the prosecutor treated prospective jurors 10 and 16 differently even though they were "similarly situated." However, there is a significant difference between the two prospective jurors—prospective juror 16 had been represented by defense counsel, while prospective juror 10 had not. Whatever relationship prospective juror 10 may have had with defense

16

counsel as the mother of his client, there is no indication in the record that it rose to the level of an attorney-client relationship. McKnight correctly observes that two prospective jurors need not be "identical" in order to compare how the State treats one versus the other. *See Miller-El*, 545 U.S. at 247 n.6 ("A per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable; potential jurors are not products of a set of cookie cutters."). However, in this case, there is nothing in the record to indicate that defense counsel's relationships with prospective jurors 10 and 16 were even remotely similar. Thus, the district court could have reasonably found that the State's strike of prospective juror 16 was not based on race.

As for prospective juror 23, the prosecutor stated that he may have prosecuted her husband in a drug case. Striking a venireperson whose relative has been convicted or prosecuted for a crime is a sufficiently race-neutral explanation. *See, e.g.*, *Ladd v. State*, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999) (venireperson struck because niece was facing drug prosecution); *Chambers v. State*, 866 S.W.2d 9, 24 (Tex. Crim. App. 1993) (venireperson struck because her brother was convicted felon who had been prosecuted by same prosecutor who was prosecuting defendant). Nevertheless, McKnight claims that this reason was pretextual because (1) the prosecutor was not certain he had prosecuted the prospective juror's husband (in contrast to the prosecutor's certainty that he was prosecuting the sister of prospective juror 26); and (2) the prosecutor did not ask prospective juror 23 any questions to confirm that he had prosecuted her husband. These facts do not establish that the prosecutor's reason was pretextual. Although the prosecutor was not certain that he had prosecuted the prospective juror's husband, he did state that he was "pretty sure" that he had prosecuted him and that the husband's name had come up in his computer records. As for the

17

fact that the prosecutor did not ask questions of prospective juror 23 to confirm his belief, the lack of questioning is not dispositive. *See Walker*, 859 S.W.2d at 568. Again, the burden of proof to show pretext is on the party opposing the strike. If McKnight had suspected that the prosecutor's reason was pretextual, she could have cross-examined the prosecutor about it. However, as with the State's other strikes, defense counsel made no arguments or offered no evidence rebutting the prosecutor's race-neutral explanation. On this record, the district court could have reasonably found that the prosecutor's explanation was genuine.

In sum, we conclude that the totality of the circumstances surrounding the State's strikes of the other challenged jurors provides another basis upon which the district court could have reasonably found that the State's reason for striking prospective juror 20 was not pretextual.

On this record, we cannot conclude that the district court's denial of McKnight's *Batson* challenge was clearly erroneous. We overrule McKnight's sole issue on appeal.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed on Motion for Rehearing

Filed: March 20, 2009

Do Not Publish