Opinion issued December 17, 2009

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-09-00217-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JUAN VASQUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 7th District Court

Smith County, Texas

Trial Court Cause No. 007-0728-08

 

 



MEMORANDUM OPINION

          A
jury convicted Juan Vasquez of aggravated sexual assault of a child and
assessed punishment at life imprisonment and a $10,000 fine.  See
Tex. Penal Code Ann. § 22.021(a)(1)(B)
(Vernon Supp. 2009).  On appeal, Vasquez
contends that the trial court erred in denying his Batson challenge.  We hold
that the State presented three race-neutral reasons for exercising a peremptory
challenge against a Hispanic venireperson and Vasquez failed to establish that
the State’s offered reasons were a pretext for purposeful racial
discrimination.  We therefore affirm.

Background

After the voir dire examination in
Vasquez’s trial for aggravated sexual assault of a child, the trial court
granted ten challenges for cause, leaving seventy-four eligible
venirepersons.  The State exercised two
of its ten peremptory strikes against prospective jurors Fraire and Beaird, the
only two Hispanics within the “strike zone” of thirty-two venirepersons.  Vasquez challenged the peremptory strikes
against Fraire and Beaird under Batson v.
Kentucky, 476 U.S. 79, 109 S. Ct. 1712 (1986), arguing that the State
impermissibly struck these two venirepersons on the basis of their race.

          The
trial court took judicial notice of the fact that Venirepersons Fraire and
Beaird were the only two Hispanics within the strike zone and asked the
prosecutor to explain his rationale for striking these two prospective jurors.  The prosecutor explained that Venireperson Fraire
had an extensive criminal history, including arrests for deadly conduct,
harassment, and a no-bill for aggravated assault.  At the Batson
hearing, Vasquez did not contend that the prosecutor’s rationale for
striking Venireperson Fraire was a pretext for racial discrimination and
Vasquez does not challenge the strike against Venireperson Fraire on appeal.

          With
respect to the decision to strike Venireperson Beaird, the prosecutor explained
that Beaird indicated on her juror information card that she did not have any children,
which, in a sexual assault of a child case, is typically “something that [the
State] take[s] into consideration” when selecting a jury.  Additionally, Venireperson Beaird stated that
she had a family member with a criminal history, although she felt that she
could still be fair and impartial in this case. 
The prosecutor also stated that he did not feel comfortable with
Venireperson Beaird’s demeanor throughout the voir dire examination, but he did
not elaborate or state what, specifically, about her demeanor made him
uncomfortable.  After listing his reasons
for striking Venireperson Beaird, the prosecutor noted that he also exercised a
peremptory strike against Venireperson Adams, a white male, who also had a family
member with a criminal history and did not have children.

In response, Vasquez pointed out that
Venirepersons Lupton, Hawkins, and Long, each of whom is white, all indicated
on their juror information cards that they did not have children.  The prosecutor did not exercise peremptory
strikes against these three venirepersons. 
The trial court observed that the State offered multiple reasons for
striking Venireperson Beaird, and Vasquez’s identification of three white
venirepersons who did not have children and were seated on the jury did not
“overcome the race neutral explanations the State has made.”  On appeal, Vasquez additionally notes that
Venirepersons Hornischer, Oefinger, and Sanders, each of whom is white, all had
a friend or family member with a criminal history and yet the prosecutor did
not strike these three venirepersons either. 
Vasquez did not, however, present this evidence to the trial court at
the Batson hearing, and no evidence
in the record indicates whether these three prospective jurors also did not have
children.[1]  At the Batson
hearing, Vasquez did not address the prosecutor’s peremptory strike against
Venireperson Adams, a white male with no children and a family member with a
criminal history.  The trial court
overruled Vasquez’s Batson challenge
and seated the jury.  The jury found
Vasquez guilty of aggravated sexual assault of a child and assessed punishment
at life imprisonment and a $10,000 fine.

Discussion

          The
Equal Protection Clause of the Fourteenth Amendment and Article 35.261 of the
Texas Code of Criminal Procedure prohibit the exercise of a peremptory strike
to exclude a prospective juror on the basis of race.  See
Batson v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717 (1986); Tex. Code Crim. Proc. Ann. art. 35.261
(Vernon 2006).  Resolving a Batson challenge is a three-step
process.  Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770–71 (1995)
(per curiam); Shuffield v. State, 189
S.W.3d 782, 785 (Tex. Crim. App. 2006). 
First, the defendant must make a prima facie showing that the State
exercised a peremptory challenge on the basis of race.  Purkett,
514 U.S. at 767, 115 S. Ct. at 1770; Thomas
v. State, 209 S.W.3d 268, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  Once the defendant makes a prima facie case
of purposeful discrimination, the burden of production then shifts to the State
to articulate a “clear and reasonably specific explanation of his legitimate
reasons for exercising the strike.”  Miller-El v. Dretke, 545 U.S. 231, 239,
125 S. Ct. 2317, 2325 (2005); see also Shuffield,
189 S.W.3d at 785.  The State’s
race-neutral reason does not have to be persuasive, or even plausible.  Purkett,
514 U.S. at 768, 115 S. Ct. at 1771.  A
race-neutral explanation is an explanation based on some factor other than the
race of the prospective juror, and the reason will be deemed race-neutral
unless discriminatory intent is inherent in the explanation.  Hernandez
v. New York, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866 (1991) (plurality
op.).  Finally, if the State offers a
race-neutral explanation, the trial court must then determine whether the
defendant proved purposeful racial discrimination.  Purkett,
514 U.S. at 767, 115 S. Ct. at 1770–71. 
The defendant bears the burden to prove, by a preponderance of the
evidence, that the State’s offered rationale for the strike is merely a pretext
for purposeful racial discrimination.  Thomas, 209 S.W.3d at 270.

          When
reviewing the trial court’s ruling on a Batson
challenge, we apply a “clearly erroneous” standard of review.  Hernandez,
500 U.S. at 369, 111 S. Ct. at 1871; Gibson
v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004).  We must have a “definite and firm conviction
that a mistake has been committed” before we can determine that the trial
court’s ruling was clearly erroneous.  See Goldberg v. State, 95 S.W.3d 345,
385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  In determining whether the prosecutor’s offered
reason is a pretext for purposeful racial discrimination, we focus on the
genuineness of the asserted race-neutral reason instead of its
reasonableness.  See Gibson, 144 S.W.3d at 533–34 (citing Purkett, 514 U.S. at 769, 115 S. Ct. at 1771–72).  The trial court’s determination turns largely
on an evaluation of the prosecutor’s credibility.  Ladd v.
State, 3 S.W.3d 547, 563 (Tex. Crim. App. 1999).  The clearly erroneous standard is highly
deferential since the trial court is in the best position to determine if the
prosecutor’s offered race-neutral explanation is genuinely race-neutral.  See Gibson,
144 S.W.3d at 534.  We examine the entirety
of the voir dire record to determine if it supports the race-neutral reason
offered by the prosecutor or if the defendant introduced sufficient evidence to
establish that the prosecutor engaged in purposeful racial discrimination in
exercising the peremptory challenge.  See Williams v. State, 804 S.W.2d 95,
101 (Tex. Crim. App. 1991); Watkins v.
State, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008) (“[The appellate court]
need not limit itself to arguments or considerations that the parties
specifically called to the trial court’s attention . . . .”).  We view the evidence relevant to the Batson challenge in the light most
favorable to the trial court’s ruling.  Cantu v. State, 842 S.W.2d 667, 689
(Tex. Crim. App. 1992); Moore v. State,
265 S.W.3d 73, 78 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

          When
determining whether a race-neutral explanation is a pretext for purposeful
racial discrimination, we examine whether statistics show that a
disproportionate number of strikes were used against minorities and whether
comparative evidence demonstrates disparate treatment of minority
venirepersons.  See Thomas, 209 S.W.3d at 273 (citing Miller-El, 545 U.S. at 240–41, 125 S. Ct. at 2325–26).  If a prosecutor’s race-neutral reason for
striking a minority venireperson applies equally to an otherwise similar
non-minority venireperson who the prosecutor does not challenge, this is
evidence that the race-neutral reason is a pretext for purposeful
discrimination.  See Miller-El, 545 U.S. at 241, 125 S. Ct. at 2325.  We cannot, however, automatically impute
disparate treatment in every case in which a reason for striking a minority venireperson
also applies to a non-minority venireperson whom the prosecutor found
acceptable.  See Cantu, 842 S.W.2d at 689. 
The Court of Criminal Appeals previously observed that the decision to
strike a particular venireperson “is a fluid process, often hinging on the
interaction of a number of variables and permutations” and it “is unlikely that
two venirepersons on one panel will possess the same objectionable attribute or
character trait in precisely the same degree.” 
Id.; Johnson v. State, 959 S.W.2d 284, 292 (Tex. App.—Dallas 1997, pet. ref’d)
(“[P]rospective jurors may share a negative feature, but that feature may be
outweighed by characteristics that are favorable from the State’s
perspective.  Such distinctions may
properly cause the State to challenge one potential juror and not another.”).  When the prosecutor offers multiple
race-neutral reasons for striking a particular venireperson, we must review all
the reasons in their entirety to determine if the explanations are valid or
merely pretextual.  See Cantu, 842 S.W.2d at 689. 
Disparate treatment is not automatically established if the prosecutor
offers multiple reasons for striking a minority venireperson and acceptable
non-minority venirepersons share one or more of the objectionable
attributes.  See id.

          Vasquez
contends that the trial court erred in denying his Batson challenge because both a statistical and comparative juror
analysis indicate that the State’s offered race-neutral reasons for striking
Venireperson Beaird were a pretext for purposeful racial discrimination.  One factor that we consider in determining if
the offered rationale for the strike is a pretext is whether statistics
indicate a disproportionate use of peremptory strikes to exclude a
minority.  See Miller-El, 545 U.S. 231, 241, 125 S. Ct. 2317, 2326.  In Miller-El,
for example, the United States Supreme Court held that the State’s use of ten
peremptory strikes to exclude 91% of eligible African-Americans from the jury
constituted disproportionate use of strikes against a minority and indicated
that the State’s reason for the strikes was a pretext.  See id.;
see also Thomas, 209 S.W.3d at 274
(holding that State’s use of six peremptory strikes to exclude 86% of eligible
African-Americans constituted disproportionate use).  Here, the State exercised two of its ten
peremptory strikes to remove 100% of the Hispanics in the thirty-two person
strike zone from the jury.  Unlike in
both Miller-El and Thomas, the prosecutor did not use a majority of his strikes against
Hispanics.  Although the prosecutor
struck 100% of the Hispanics within the strike zone, the prosecutor used only
two of his ten peremptory strikes to eliminate the two Hispanics from the jury.  The Court of Criminal Appeals previously
observed that:

[T]he bare fact of strikes exercised against persons
of a certain race does not necessarily reveal the work of a racially prejudiced
mind.  What may be revealing, however, is
a repetition of such strikes in suspiciously large numbers—numbers larger than
one would expect if race had nothing to do with it.

 

Linscomb v. State, 829 S.W.2d 164, 166 (Tex. Crim. App. 1992).  Two out of ten challenges is not a
“suspiciously large number” of available strikes, and thus we cannot say that the
ultimate exclusion of 100% of the Hispanics within this strike zone results
more from purposeful discrimination than from random chance.

In addition to statistical analysis,
we also examine “side-by-side comparisons” of the prospective jurors to
determine if the State’s offered race-neutral reasons are merely
pretextual.  See Miller-El, 545 U.S. at 241, 125 S. Ct. at 2325; Moore, 265 S.W.3d at 86–88; Thomas, 209 S.W.3d at 274.  At the Batson
hearing, the prosecutor asserted the following reasons for striking
Venireperson Beaird:  (1) she did not
have children; (2) she had a family member with a criminal history; and (3) her
demeanor.[2]  We have previously held that whether a
venireperson has children is a valid, race-neutral explanation for exercising a
peremptory challenge.  See Moore, 265 S.W.3d at 87.  Similarly, the Texarkana Court of Appeals
held that striking a prospective juror because he or she has a family member or
close friend with a criminal history is also race-neutral.  See
Alexander v. State, 919 S.W.2d 756, 765 (Tex. App.—Texarkana 1996, no pet.).  In support of his Batson challenge, Vasquez
presented evidence that the prosecutor did not exercise strikes against Venirepersons
Lupton, Hawkins, and Long, three white venirepersons who also indicated on
their juror information cards that they did not have children.  On appeal, as further evidence of disparate
treatment and purposeful discrimination, Vasquez points out that Venirepersons
Hornischer, Oefinger, and Sanders stated that, like Venireperson Beaird, they
have a friend or family member with a criminal history, and yet all three of
these white venirepersons served on the jury. 
Vasquez did not present this contention to the trial court at the Batson hearing, nor did he otherwise
challenge the prosecutor’s rationale of a friend or family member with a
criminal history as a pretext for purposeful discrimination.  See
Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) (“[A] party’s
failure to offer any real rebuttal to a proferred race-neutral explanation can
be fatal to his claim.”).

          Similar
to the situation in Cantu, the
prosecutor offered multiple race-neutral explanations for striking Venireperson
Beaird.  Although Venirepersons Lupton,
Hawkins, and Long indicated that they did not have children, only Venireperson
Lupton had a friend with a criminal history, and he suggested that he had
minimal knowledge of the offense and its circumstances.  On appeal, Vasquez identified Venirepersons
Hornischer, Oefinger, and Sanders as having a friend or family member with a criminal
history, but Vasquez never presented any evidence regarding whether these
venirepersons also did not have children. 
Therefore, the record indicates that only three venirepersons did not
have children and had a friend or family member with a criminal history:  Venirepersons Lupton, Beaird, and Adams.  Although the prosecutor did not strike
Venireperson Lupton, a white male, he did strike Venireperson Adams, another
white male, in addition to Venireperson Beaird, a Hispanic female.

          The
Court of Criminal Appeals cautioned against automatically imputing disparate
treatment when the State does not strike a non-minority venireperson who
possesses the same characteristics as a challenged minority venireperson, since
it is unlikely that each venireperson will possess the objectionable attribute
in the same degree.  See Cantu, 842 S.W.2d at 689. 
When we examine the entirety of the voir dire examination and the Batson hearing, the record indicates
that although Venireperson Lupton had a friend with a criminal history, the
offense occurred elsewhere and he had little knowledge about the circumstances
of the offense, such as whether law enforcement and the judicial system treated
his friend fairly.  Venirepersons Adams
and Beaird both had a family member with a criminal history, and both of these
venirepersons appeared to have greater knowledge of the circumstances of the
offense and their family member’s experience with law enforcement and the
judicial system.  Vasquez never attempted
to compare these three venirepersons on the basis of both race-neutral reasons
offered by the prosecutor, nor did he address the strike of Venireperson Adams,
a white male with the same two objectionable attributes as Venireperson Beaird.[3]  When we view the evidence in the light most
favorable to the trial court’s ruling, we do not have the “definite and firm
conviction that a mistake has been committed” necessary to hold that the trial
court’s denial of Vasquez’s Batson
challenge was clearly erroneous.

Conclusion

The prosecutor articulated three
race-neutral reasons for striking Venireperson Beaird, a Hispanic.  Although Vasquez presented evidence that
three white venirepersons also did not have children and served on the jury,
and three additional white venirepersons had a friend or family member with a
criminal history and served on the jury, Vasquez failed to address the
prosecutor’s strike of Venireperson Adams, a white male possessing both of the
objectionable attributes.  We hold that Vasquez
failed to establish that the trial court’s denial of his Batson challenge was clearly erroneous.  We therefore affirm the judgment of the trial
court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Bland and Massengale.

Do Not Publish.  Tex.
R. App. P. 42.4(b).











[1] Although Vasquez offered the juror information cards
of Venirepersons Fraire and Beaird as evidence during the Batson hearing, he never offered the juror information cards of
Venirepersons Hornischer, Oefinger, and Sanders.  The clerk’s record does not contain the juror
information cards for any other of the prospective jurors in this case.





[2] A party may validly strike a prospective juror on the
basis of their non-verbal conduct and demeanor during voir dire.  See
Yarborough v. State, 947 S.W.2d 892, 896 (Tex. Crim. App. 1997).  The striking party must, however,
specifically describe the particular behavior on the record to avoid an
inference of discrimination.  See Moore v. State, 265 S.W.3d 73, 80–81
(Tex. App.—Houston [1st Dist.] 2008, no pet.). 
In this case, the prosecutor stated that he “did not feel comfortable
with” Venireperson Beaird’s demeanor but did not elaborate or specifically
describe the behavior with which he was uncomfortable.  Vasquez did not challenge, either at the Batson hearing or on appeal, this
particular reason as a pretext for discrimination.





[3] In Miller-El v.
Dretke, the United States Supreme Court cautioned that it was not adopting
a rule stating that prospective juror comparisons were not probative unless the
two jurors being compared were “identical in all respects.”  545 U.S. 231, 248 n.6, 125 S. Ct. 2317, 2329
(2005).  The Court noted that “[a] per se rule that a defendant cannot win
a Batson claim unless there is an
exactly identical white juror would leave Batson
inoperable.”  Id.  We agree.  When the State strikes both a minority
venireperson and a non-minority venireperson who shares the same attributes
that the State finds objectionable, however, this is evidence that the State’s
race-neutral reasons are legitimate and not merely a pretext for purposeful
racial discrimination.