Affirmed and Memorandum Opinion
filed August 26, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00725-CR



Tiffany Nicole
Walton, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 7th District Court

Smith County, Texas

Trial Court
Cause No. 007-1175-07



 

MEMORANDUM OPINION 

Appellant Tiffany Nicole Walton appeals from her
conviction for aggravated robbery.  In two issues, appellant claims (1) the
trial court erred in overruling appellant’s objections to the State’s
peremptory strikes on the basis that they were exercised in violation of Batson
v. Kentucky, 476 U.S. 79 (1986) and (2) the evidence is factually
insufficient to support her conviction.  We affirm.[1]  

                                                                                        
I.           
Factual and
Procedural Background

            On the evening of
April 14, 2007, Oscar Barker was delivering pizza to a residence on Adams
Street in Smith County, but was unable to locate the residence listed on the
delivery ticket.  While driving down Adams Street, Barker noticed two
individuals sitting on the porch steps of a home.  Barker stopped and asked if
they had ordered pizza, and they responded that they had.  As Barker approached
the porch, the taller of the two individuals pulled out a rifle and pointed it
at Barker.  Both of the individuals then stood up and said “Give me your money. 
We don’t want the pizza.  We want your money.”  Barker handed the individuals
his wallet and some cash from his pockets after the unarmed individual stated “He’ll
shoot you.  We’re going to kill you.  We want your money.”  As the unarmed
individual insisted that Barker had more money, the gunman told Barker to lay
face-down on the ground and placed the barrel of the rifle on Barker’s neck.  Barker
then took more money from his pocket and threw it on the ground.  After
retrieving this money, the unarmed individual said “we got to go” and the two assailants
ran away.  Barker went to his vehicle, called 911, and described the robbers
and the direction in which they were headed.  Police officers arrived at
Barker’s location a few minutes later, and Barker explained what had happened
and stated that the robbers took his wallet and cash.  

            Near the time of
Barker’s 911 call, the Tyler Police Department received information about two
individuals dressed in dark clothing who were running towards a vehicle parked nearby. 
Several minutes later, police officers stopped a vehicle matching the suspect
vehicle’s description at a convenience store and placed the vehicle’s occupants—Narauda
Thompson, the driver; Sharonda Hampton, the front passenger; and appellant, the
rear passenger—into separate police vehicles.  The police found a wallet
containing Barker’s identification laying on the vehicle’s rear floorboard and
a rifle in the vehicle’s trunk.  The police brought Barker to the convenience
store, where he positively identified the wallet found in the vehicle as
belonging to him and the rifle in the trunk as the one used in the robbery.  Barker
also positively identified Thompson and appellant as the two individuals who
robbed him and told police that he had never seen Hampton before.  Following
Barker’s identification, appellant, Thompson, and Hampton were transported to a
police station.  Thompson confessed his involvement in the robbery and told
police that appellant committed the robbery with him.[2]  

            Appellant was
subsequently indicted and tried for aggravated robbery.  The jury found
appellant guilty and assessed punishment at thirty years’ confinement in the
Texas Department of Criminal Justice, Institutional Division, and a $10,000
fine.  This appeal followed.

                                                                                                                
II.           
Appellant’s Batson
Motion

In her first issue, appellant claims the trial court
erred by overruling her Batson objections to the State’s peremptory
challenges to two African-American venire members, Dannette Leach and Tracy
Dews.  During voir dire, fifty-two prospective jurors remained in the venire
panel following strikes for cause and by agreement.  Of these fifty-two
individuals, only two (Leach and Dews) were African-American.[3]  The State
exercised two of its ten peremptory strikes against Leach and Dews.  Appellant
objected to the State’s exercise of these strikes, arguing the strikes were
racially motivated.  The trial court held a Batson hearing in which the
prosecutor explained the State’s reasons for striking Leach and Dews.  

The prosecutor explained that Leach had been struck
because she (1) favored rehabilitation over punishment, (2) had a friend who
had been arrested for, charged with, or convicted of an offense greater than a
class C misdemeanor, and (3) was unsure whether this friend had been treated
fairly by law enforcement or the justice system.  The prosecutor then explained
that Dews had been struck because (1) she had a family member who had been
arrested for, charged with, or convicted of an offense greater than a class C
misdemeanor and was unsure whether this family member had been treated fairly
by the justice system and (2) the prosecutor recalled previously prosecuting another
individual named Dews in Smith County.  The trial court found that the
prosecutor provided valid race-neutral reasons for exercising the challenged
strikes and overruled appellant’s Batson objection.  

Appellant now contends the State’s proffered reasons
for striking Leach and Dews were a pretext for purposeful discrimination, thus
entitling her to a new trial.  The State maintains the trial court properly
denied appellant’s Batson objection because appellant did not satisfy
her burden of showing the challenged strikes were racially motivated.  

A)    Standard
of Review 

We may overturn a trial court’s ruling on a Batson
objection only if that ruling was “clearly erroneous.”  Snyder v. Louisiana,
552 U.S. 472, 477 (2008); Young v. State, 283 S.W.3d 854, 866 (Tex.
Crim. App.), cert. denied, 130 S. Ct. 1015 (2009).  This highly
deferential standard is used because of the trial court’s unique position to
make determinations regarding the prosecutor’s credibility and demeanor, as
well as the demeanor of the prospective jurors.  Snyder, 552 U.S. at
477; Gibson v. State, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004).  A
ruling is clearly erroneous if it leaves the reviewing court “with the
‘definite and firm conviction that a mistake has been committed.’”  Guzman
v. State, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002) (quoting United
States v. Fernandez, 887 F.2d 564, 567 (5th Cir. 1989)).  We review the
record of the Batson hearing and the voir dire examination in the light
most favorable to the trial court’s ruling.  Young, 283 S.W.3d at 866.  

B)    Applicable
Law 

            Striking a
prospective juror on the basis of race violates the Equal Protection Clause of
the Fourteenth Amendment to the United States Constitution.  See U.S. Const. amend. XIV; Batson, 476
U.S. at 89; see also Tex. Code
Crim. Proc. Ann. art. 35.261 (Vernon 2006).  Resolution of a Batson
challenge involves a three-step process.  Snyder, 552 U.S. at 476.  First,
the defendant must establish a prima facie case showing that the State
exercised a peremptory challenge in a discriminatory manner.  Id.; Young,
283 S.W.3d at 866.  Next, the burden shifts to the State to provide a
race-neutral explanation for the challenged strike.[4]  Snyder,
552 U.S. at 476–77; Young, 283 S.W.3d at 866.  If the State provides a
race-neutral explanation, the burden shifts back to the defendant to show that
the explanation is merely a pretext for purposeful discrimination.  Williams
v. State, 301 S.W.3d 675, 688 (Tex. Crim. App. 2009), cert. denied,
No. 09-9635, — S. Ct. — , 2010 WL 978827 (U.S. June 14, 2010).  Ultimately, the
trial court must determine whether the defendant carried the burden of proving
purposeful discrimination by the State.  Snyder, 552 U.S. at 477; Young,
283 S.W.3d at 866.  While the burden of production may shift between the
defendant and the State, the defendant bears the “ultimate burden of
persuasion” and must show, by a preponderance of the evidence, that the
challenged peremptory strike was racially motivated.  See Purkett v. Elem,
514 U.S. 765, 768 (1995) (per curiam); Watkins v. State, 245 S.W.3d 444,
447 (Tex. Crim. App.), cert. denied, 129 S. Ct. 92 (2008).  

C)    Analysis

Appellant’s only argument on appeal is that a statistical
review of the State’s use of its peremptory strikes shows the prosecutor’s
proffered reasons for striking Leach and Dews were a pretext for racial
discrimination.  When determining whether the State’s explanations for exercising
peremptory strikes are a pretext for purposeful discrimination, we examine (1)
whether statistics show a disproportionate number of peremptory strikes were
used against minorities and (2) whether comparative evidence demonstrates
disparate treatment of minority venire members.  Thomas v. State, 209
S.W.3d 268, 273 (Tex. App.—Houston [1st Dist.] 2006, no pet.); see also Miller-El
v. Dretke, 545 U.S. 231, 240–41 (2005) (considering several factors,
including “bare statistics” and “side-by-side comparisons” of venire members
struck by the prosecution with those who were not, while analyzing appellant’s Batson
challenge).  

i)       Proportionality
of Strikes 

Appellant argues the State’s use of two of its ten
peremptory strikes (20%) to eliminate 100% of the African-Americans in the
strike zone shows that the State’s proffered reasons for striking Leach and
Dews were a pretext for purposeful discrimination.  In support of this
contention, appellant cites two cases in which reviewing courts found some
evidence of purposeful discrimination after conducting a statistical analysis
of the prosecution’s use of peremptory strikes.  Appellant first cites Miller-El
v. Dretke, in which the United States Supreme Court concluded the
prosecution’s use of its peremptory strikes against ten of eleven
African-American venire members constituted a disparate use of strikes.  See
Miller-El, 545 U.S. at 240–41.  Appellant then cites Thomas v. State,
in which the First Court of Appeals determined the State utilized a
disproportionate number of peremptory strikes to exclude minorities by using
six of its ten peremptory strikes to exclude six of the seven African-Americans
remaining in the venire panel.  See Thomas, 209 S.W.3d at 274.[5]  

When conducting a statistical review of the State’s
use of peremptory challenges, we are mindful that “a repetition of such strikes
in suspiciously large numbers” against minorities is an indicator of purposeful
discrimination.  See Linscomb v. State, 829 S.W.2d 164, 166 (Tex. Crim.
App. 1992).  In this case, unlike those relied upon by appellant, the State did
not utilize a majority of its strikes against African-Americans.  Because two
out of ten strikes is not a “suspiciously large number” of available strikes,
we cannot conclude that the exclusion of 100% of the African-Americans from the
venire panel “results more from purposeful discrimination than from random
chance.”  See Vasquez v. State, No. 01-09-00217-CR, 2009 WL 4855229, at
*3–4 (Tex. App.—Houston [1st Dist.] Dec. 17, 2009, pet. ref’d) (mem. op., not
designated for publication) (determining prosecution’s use of two out of ten
peremptory strikes to remove 100% of the Hispanics in the strike zone was not a
disproportionate use of peremptory strikes).  Thus, we cannot agree with
appellant that a statistical review of the State’s use of its peremptory
challenges shows the prosecution’s proffered reasons for striking Leach and
Dews were a pretext for purposeful discrimination.  

While the disproportionate use of peremptory
challenges may support appellant’s burden of persuasion that the State’s
proffered race-neutral explanations for the challenged strikes are a pretext
for discrimination, a comparative analysis of the State’s peremptory strikes is
more powerful evidence than bare statistics.  See Miller-El, 545 U.S. at
241; Watkins, 245 S.W.3d at 452; see also Held v. State, 948
S.W.2d 45, 49–50 (Tex. App.—Houston [14th Dist.] 1997, pet. ref’d) (recognizing
a proper Batson analysis involves considering a combination of factors
and not merely “looking for some magic number or ‘telling’ percentage” of
stricken minority venire members).  Thus, we will consider the prosecutor’s
reasons for exercising the challenged strikes and determine whether the record
shows disparate treatment of minority venire members.  

ii)    Comparative
Juror Analysis 

Evidence tending to prove purposeful discrimination exists
if the record shows that a prosecutor’s explanations for striking a minority
venire member apply equally to an otherwise similar non-minority who is
permitted to serve.  Miller-El, 545 U.S. at 241.  As discussed above,
the prosecutor explained during the Batson hearing that Leach had been
struck because she favored rehabilitation over punishment and was unsure
whether a friend who had been involved in a criminal investigation had been
treated fairly by law enforcement or the justice system.  The prosecutor also
stated that Dews had been struck because she was unsure whether a family member
who had been involved in a criminal investigation had been treated fairly by
the justice system and the prosecutor remembered prosecuting another individual
named Dews in Smith County.[6] 
The prosecutor further noted that the State struck four white venire members
who, like Leach, favored rehabilitation over punishment and another white
venire member who, like Dews, was uncertain whether a family member involved in
a criminal investigation had been treated fairly by the justice system.  Appellant
did not challenge these assertions or identify any similarly situated
non-minority individuals who were not struck by the State and eventually served
on the jury during appellant’s trial.  Appellant also does not make a
comparative analysis argument on appeal.  We decline to examine the record to
discover any comparisons to rebut those presented by the State.  See Lizcano
v. State, No. AP-75879, 2010 WL 1817772, at *4 (Tex. Crim. App. May 5,
2010) (not designated for publication) (foregoing a comparative juror analysis
because appellant failed to identify any non-minority jurors who were not
struck by the State with characteristics similar to a minority venire member
who was struck by the State).  

Once the prosecutor provided the State’s explanations
for striking Leach and Dews, appellant bore the burden to convince the trial
court that the reasons were not race-neutral and were, in fact, a pretext for
purposeful discrimination.  See Williams, 301 S.W.3d at 688; see also
Perez v. State, No. 14-07-00319-CR, 2008 WL 2261455, at *3 (Tex.
App.—Houston [14th Dist.] May 27, 2008, pet. ref’d) (mem. op., not designated
for publication) (“It was incumbent upon appellant to establish that the
State’s proffered reasons were mere pretext, and to do so by a preponderance of
the evidence.”).  A defendant’s failure to offer any rebuttal to the
prosecutor’s race-neutral explanations can be fatal to a Batson
challenge.  See Johnson v. State, 68 S.W.3d 644, 649 (Tex. Crim. App.
2002); see also Wamget v. State, 67 S.W.3d 851, 859–60 (Tex. Crim. App.
2001) (overruling Batson challenge where appellant presented no evidence
of racial or ethnic discrimination beyond general statement that venire member
was excluded because she was “born in Liberia”).  

In this case, appellant offered no rebuttal evidence
or argument that the prosecutor’s reasons for striking Leach and Dews were a
pretext for discrimination.  Instead, defense counsel simply questioned one of
the prosecutors as to whether the race of any venire member was noted on the
State’s list or chart of prospective jurors.  Following this brief line of
questioning, defense counsel indicated he had no further questions or arguments. 
We, therefore, cannot conclude the State’s proffered reasons for the challenged
strikes were a pretext for purposeful discrimination.  See Johnson, 68
S.W.3d at 649; see also Burton v. State, No. 14-06-00827-CR, 2008 WL
4151843, at *6 (Tex. App.—Houston [14th Dist.] Mar. 27, 2008, pet. ref’d) (mem.
op., not designated for publication) (determining appellant’s failure to rebut
prosecutor’s race-neutral reasons or present evidence establishing explanations
were pretextual precluded a finding that the challenged strikes were exercised
on the basis of race).  Under these circumstances, appellant has not
established that Leach and Dews were excluded on the basis of race.  Because of
this, we cannot say the trial court’s denial of appellant’s Batson motion
was clearly erroneous.  See Guzman, 85 S.W.3d at 254.  Accordingly, we overrule
appellant’s first issue.

                                                                                    
III.           
Factual Sufficiency
of the Evidence

            In her second issue, appellant challenges the factual
sufficiency of the evidence to support her conviction.  Specifically, she
asserts that the evidence fails to prove she participated in the robbery.

A)    Standard
of Review

When conducting a factual-sufficiency review, the
only question to be answered is: “Considering all of the evidence in a neutral
light, was a jury rationally justified in finding guilt beyond a reasonable
doubt?”  Grotti v. State, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008).  Evidence
can be factually insufficient when the evidence supporting the verdict is (1)
so weak that the verdict is clearly wrong and manifestly unjust or (2)
outweighed by the great weight and preponderance of the contrary evidence so as
to render the verdict clearly wrong and manifestly unjust.  Id.  We
follow three basic principles in our review: First, we consider all of the
evidence in a neutral light rather than in a light most favorable to the
verdict.  Laster v. State, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009). 
Second, we may find the evidence factually insufficient only when necessary to
prevent manifest injustice.  Id.  Third, we must explain why the
evidence is too weak to support the verdict or why the conflicting evidence
greatly weighs against the verdict.  Id.  We are not free to disregard
the verdict simply because we disagree with it.  Id.  

B)    Applicable
Law 

            We consider the
elements of the charged offense as defined by a hypothetically correct jury
instruction when reviewing a factual-sufficiency challenge.  Wooley v. State,
273 S.W.3d 260, 268 (Tex. Crim. App. 2008).  Such a charge (1) accurately sets
out the law, (2) is authorized by the indictment, (3) does not unnecessarily
increase the State’s burden of proof or unnecessarily restrict the State’s
liability theories, and (4) adequately describes the particular offense for
which the defendant was tried.  Villarreal v. State, 286 S.W.3d 321, 327
(Tex. Crim. App.), cert. denied, 130 S. Ct. 515 (2009).  As authorized
by the indictment in this case, the hypothetically correct jury charge would
include the following elements of the charged offense: (1) appellant, (2) while
in the course of committing theft and with intent to obtain or maintain control
of the property, (3) intentionally or knowingly threatened or placed Oscar
Barker in fear of imminent bodily injury or death (4) while using or exhibiting
a deadly weapon.[7] 
See Tex. Penal Code Ann.
§§ 29.02(a)(2), 29.03(a)(2) (Vernon 2003).  The hypothetically correct
jury charge in this case would also instruct the jury that, even if appellant
did not use or exhibit a deadly weapon herself, she could be criminally
responsible for the charged offense if, acting with intent to promote or assist
the commission of the offense, appellant solicited, encouraged, directed,
aided, or attempted to aid another person to commit the offense.  See id.
§ 7.02(a)(2).  

C)    Analysis

Appellant contends the evidence is factually
insufficient to prove she participated in the charged offense.  The State bore
the burden of proving appellant’s participation in the robbery beyond a
reasonable doubt.  See Smith v. State, 56 S.W.3d 739, 744 (Tex.
App.—Houston [14th Dist.] 2001, pet. ref’d).  Identity may be proved through
direct or circumstantial evidence, or through inference.  Id.  To prove
appellant’s identity as a participant in this case, the State elicited
testimony from Thompson showing that appellant called him on the night of the
offense and “came up with the idea of robbing the pizza man” because she needed
money to pay probation fees.  Thompson also testified appellant was with him “the
whole time” during the offense and that appellant told Barker to give up his
money.  Multiple witnesses also testified that Barker, after being brought to
the convenience store where appellant was in custody, positively identified
appellant as one of the individuals who robbed him.  During cross-examination,
Barker vehemently denied defense counsel’s suggestions that he initially
identified Hampton, not appellant, as one of the robbers.  Thompson also
testified that Hampton did not participate in the robbery.  At trial, Barker
positively identified appellant and stated he was “100 percent” certain she was
“the person out there not holding the gun” when he was robbed.  The positive
identification of a defendant as a perpetrator is sufficient to support a
conviction.  Cate v. State, 124 S.W.3d 922, 928 (Tex. App.—Amarillo
2004, pet. ref’d) (per curiam); see also Kesaria v. State, 148 S.W.3d
634, 641 (Tex. App.—Houston [14th Dist.] 2004) (“Positive identification of a
defendant by the victim of a robbery is to be given great weight.”), aff’d,
189 S.W.3d 279 (Tex. Crim. App. 2006).  

Appellant contends Barker’s identification testimony
contains contradictions and inconsistencies and is therefore factually
insufficient evidence to prove appellant’s participation.  In support of this
position, appellant references portions of Barker’s testimony in which Barker
stated that it was dark at the scene, the offense occurred very quickly, he did
not initially know whether the robbers were male or female, and that appellant,
Thompson, and Hampton were all wearing similar dark clothing.  Barker
testified, however, that he was able to see the robbers because the house next
door was well lit and he was close enough to see the robbers’ faces.  Barker
also stated that he was able to identify appellant from her face rather than
her relative size or clothing.  Appellant is essentially challenging Barker’s
credibility as a witness.  As the exclusive judge of the credibility of the
witnesses and the weight to give their testimony, it is the sole province of
the jury to resolve any conflicts or inconsistencies in the evidence.  Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); State v. Moreno,
297 S.W.3d 512, 522 (Tex. App.—Houston [14th Dist.] 2009, pet. ref’d); see
also Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (reviewing
courts afford almost complete deference to a jury’s determination that is based
upon an evaluation of witness credibility).  A jury’s resolution of conflicting
evidence in the State’s favor does not render the decision manifestly unjust.  See
Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997).  We cannot say
that any inconsistencies or conflicts in Barker’s testimony greatly outweigh
his consistent positive identification of appellant, both on the night of the offense
and at trial, as one of the individuals who participated in the charged
offense.  

Appellant also asserts Thompson’s testimony was
motivated by his desire to protect Hampton, the mother of his child, from
criminal prosecution.  Additionally, appellant contends that “numerous facts”
provided by Thompson’s testimony implicate Hampton, rather than appellant, in
the offense.  These facts include: Thompson took the rifle used in the robbery
from Hampton’s house, Hampton drove the suspect vehicle to the scene, Thompson
used a phone belonging to Hampton’s mother to order the pizza, Hampton was
wearing dark clothing similar to appellant’s, and Hampton was in the suspect
vehicle when it was stopped by police.  Thompson acknowledged these facts, but
consistently testified that Hampton was not involved in the offense.  When
Thompson confessed his involvement in the offense, he stated appellant was
involved and did not mention Hampton’s name.[8] 
The evidence concerning Thompson’s alleged motive to lie and the facts showing
Hampton’s possible involvement in the offense were before the jury.  It was the
jury’s role to consider Thompson’s credibility and the weight to give any
evidence challenging Thompson’s testimony concerning appellant and Hampton’s
involvement.  Lancon, 253 S.W.3d at 705.  Absent evidence that the
jury’s decision is clearly wrong or manifestly unjust, we will not disturb the
jury’s verdict.  Grotti, 273 S.W.3d at 280.  

Finally, appellant points to the testimony of Jessica
Walton, appellant’s sister, as strong evidence showing she was not involved in
the charged offense.  Walton testified that she was with appellant on the night
of the offense until 11 p.m., when appellant was picked up at a restaurant by
Hampton and Thompson in a green van.  To rebut Walton’s testimony, the State
presented video evidence showing that appellant, Thompson, and Hampton were
stopped by police at 10:11 p.m. in a silver Mercury Grand Marquis.  As the sole
judge of the weight and credibility to give witness testimony, the jury is free
to believe or disbelieve all or any portion of a witness’s alibi testimony.  See
Vasquez v. State, 67 S.W.3d 229, 236–39 (Tex. Crim. App. 2002) (conducting
factual-sufficiency review and concluding jury could reasonably disbelieve
alibi testimony presented by appellant’s girlfriend); Leadon v. State,
No. 01-08-00839-CR, — S.W.3d — , 2010 WL 143467, at *6 (Tex. App.—Houston [1st
Dist.] Jan. 14, 2010, no pet.) (recognizing jury’s role in assessing witness
credibility and weight to give witness testimony and declining to disturb jury’s
decision to disbelieve appellant’s alibi witnesses).  By its verdict, the jury
chose to disbelieve Walton’s testimony and believe the evidence showing that
appellant was a participant in the charged offense.  

We conclude the evidence showing that appellant was
present at the scene of the offense and actively encouraged Barker to give his
money to her and Thompson, combined with Barker’s consistent positive
identifications of appellant as one of the individuals involved in the offense,
constitutes factually sufficient evidence to support a finding that appellant
participated in the charged offense.  See Tex. Penal Code Ann. §§ 29.02(a)(2), 29.03(a)(2); see
also Harmon v. State, 167 S.W.3d 610, 614 (Tex. App.—Houston [14th Dist.]
2005, pet. ref’d) (holding evidence was legally and factually sufficient to
support aggravated robbery conviction where complainant identified appellant
from a photo lineup and testified at trial that “she was ‘[a]bsolutely sure’
that appellant was the person who beat and robbed her”); Apolinar v. State,
106 S.W.3d 407, 412–13 (Tex. App.—Houston [1st Dist.] 2003) (concluding
identification evidence was factually sufficient to support aggravated robbery
conviction where complainant identified appellant three times at trial and
witness testimony was fairly consistent in describing appellant’s appearance,
although complainant demonstrated confusion and vision problems at trial), aff’d,
155 S.W.3d 184 (Tex. Crim. App. 2005).  

After viewing all the evidence in a neutral light, we
conclude the jury was rationally justified in finding appellant’s guilt for the
charged offense beyond a reasonable doubt because the evidence supporting the
verdict is not (1) so weak as to be clearly wrong and manifestly unjust or (2)
outweighed by the great weight and preponderance of the contrary evidence.  Thus,
the evidence is factually sufficient to support appellant’s conviction.  See
Grotti, 273 S.W.3d at 283.  We overrule appellant’s second issue.  

                                                                                                                                                  
IV.           
Conclusion

            After reviewing
the record, we conclude (1) the trial court did not err by overruling
appellant’s Batson motion because appellant failed to demonstrate that
the prosecutor’s proffered reasons for striking Leach and Dews were a pretext
for purposeful discrimination and (2) the evidence is factually sufficient to
show that appellant participated in the charged offense.  We affirm the
judgment of the trial court.  

 








                                                                                                                                                                                                                                    /s/        Leslie
B. Yates

                                                                                    Justice

 

 

 

Panel consists of Justices Yates,
Seymore, and Brown.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
This appeal was transferred to this court from the Twelfth Court of Appeals. 
In cases transferred from one court of appeals to another, the transferee court
must decide the case in accordance with the precedent of the transferor court
if the transferee court’s decision would have been inconsistent with the
precedent of the transferor court.  See Tex. R. App. P. 41.3. 





[2]
Thompson subsequently pleaded guilty to his involvement in the robbery and was
sentenced to forty years’ imprisonment.  





[3]
The trial court took judicial notice that appellant is African-American and
stated on the record that Leach and Dews are also African-American.  





[4]
An explanation is race-neutral if it is “based on something other than the race
of the juror.”  Hernandez v. New York, 500 U.S. 352, 360 (1991).  The
State’s reason need not be persuasive or even plausible.  Purkett v. Elem,
514 U.S. 765, 767–68 (1995) (per curiam).  The State’s explanation will be
deemed race-neutral unless “a discriminatory intent is inherent in the
prosecutor’s explanation.”  Hernandez, 500 U.S. at 360.  





[5]
Several other courts have reached similar conclusions.  See Watkins, 245
S.W.3d at 451–52 (concluding prosecution’s use of seven of the State’s eleven
peremptory strikes against seven out of eight African-American prospective
jurors constituted a disproportionate use of peremptory challenges); Leadon
v. State, No. 01-08-00839-CR, — S.W.3d — , 2010 WL 143467, at *11 (Tex.
App.—Houston [1st Dist.] Jan. 14, 2010, no pet.) (determining State’s use of
four of its eleven peremptory strikes against four out of five African-American
venire members constituted a statistically disproportionate number of strikes);
Greer v. State, 310 S.W.3d 11, 15 (Tex. App.—Dallas 2009, no pet.)
(concluding State’s use of all of its six peremptory strikes against six out of
eight African-American venire members was “remarkably disproportionate”).  





[6]
We note that a prospective juror’s belief that rehabilitation is the primary
goal of punishment can be a race-neutral reason for exercising a peremptory
strike.  See Crew v. State, No. 05-08-00959-CR, 2009 WL 2712386, at *5
(Tex. App.—Dallas Aug. 31, 2009, pet. ref’d) (mem. op., not designated for
publication); Montgomery v. State, 198 S.W.3d 67, 76 (Tex. App.—Fort
Worth 2006, pet. ref’d); Victor v. State, 995 S.W.2d 216, 222 (Tex.
App.—Houston [14th Dist.] 1999, pet. ref’d).  Additionally, the fact that a
prospective juror has a family member or close friend who has been arrested,
charged, or convicted of a crime may also be a race-neutral basis for utilizing
a peremptory strike.  See Emerson v. State, 851 S.W.2d 269, 272 (Tex.
Crim. App. 1993); Vasquez, 2009 WL 4855229, at *4; Montgomery,
198 S.W.3d at 76.  





[7]
A deadly weapon is defined, in relevant part, as a firearm.  Tex. Penal Code Ann.
§ 1.07(a)(17)(A) (Vernon Supp. 2009).  





[8]
Thompson initially told police that appellant and another individual were
involved in the robbery, but later confessed that only he and appellant
participated in the offense.